IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 15-CV-00955 CMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ZEN MAGNETS, LLC, and
SHIHAN QU,

Defendants.
_____

DEFENDANTS' RESPONSE TO THE UNITED STATES' MOTION FOR SUMMARY
JUDGMENT FILED JUNE 12, 2015 (Doc. 20)
_____

Defendants, through counsel, and pursuant to Rule 56, F.R.C.P., Rule 56.1 of the Local Rules of Practice of the District of Colorado and CMA Civ. Practice Standards, III.G.5, file their response to Plaintiff's Motion for Summary Judgment, asking the Court to deny Plaintiffs' Motion because there do exist genuine issues of material fact regarding Plaintiff's allegations.

## I. INTRODUCTION

On July 17, 2014, Star Networks USA, LLC ("Star") entered into a Consent Agreement with the CPSC due to the capital burden of entering into a lawsuit, despite having no recorded ingestions associated with its product, and having broken no laws. On June 12, 2015, the United States filed a Motion for Summary Judgment against Zen Magnets, LLC ("Zen") and Shihan Qu ("Qu"), (Doc. 20) supporting its contentions with evidence set forth in its appendix. Specifically, Plaintiff argues that no material issues of

fact exist with regard to their asserted claims. The Government contends that Zen and Mr. Qu broke the law by selling subject products that had been part of a Consent Agreement that required the subject products to no longer be sold by anyone, despite the uncontested fact that the magnets used by Zen were the exact magnets that would have still been acceptable to purchase directly from China and offer for sale in the United States. The plain language of the Consent Agreement (Movant's Ex. 1), read together with the Complaint against Star Networks (Defendants' Ex. A – Star Complaint), requires the conclusion that the "subject products" of the Consent Agreement cannot be identified as the magnets sold by Zen. The Defendants' argument, that the subject products at issue here were different, is a factual question. The Court must look at the plain meaning of a contract on its face. And the Consent Agreement at issue herein is a contract. And, in so far as there is no ambiguity in the Consent Agreement or the underlying Administrative Complaint that it resolves, it is clear that the "subject products" sold by Defendants were not those prohibited for sale under the Consent Agreement. As such, summary judgment is not an appropriate way to dispose of this case.

## II. RESPONSE TO UNDISPUTED MATERIAL FACTS

Pursuant to this Court's Civil Practice Standards, Defendants address Plaintiff's Statement of Undisputed Material Facts as follows:

### A. FACTS THAT THE UNITED STATES BELIEVES ARE MATERIAL

1. On July 10, 2014, Qu purchased 917,000 magnets from Star, sold under the brand name "Magnicube." (Movant's Appx. p. 15-18, 48 – Star Networks' spreadsheet

showing sale of magnets to Zen; invoice showing sale of magnets from Star to Zen; Qu testimony.) Admitted.

2. Of the 917,000 "Magnicube" magnets purchased from Star, approximately 803,000 were magnet spheres and approximately 114,000 were magnet cubes. (Movant's Appx. p. 30, 55-56 – March 20, 2015 Japha letter; Qu testimony.) Admitted.

3. Zen mixed the magnet spheres purchased from Star with indistinguishable magnet spheres that Zen had obtained from other sources. (Movant's Appx. p. 49, 51, 56 – Qu testimony.) Admitted.

4. Beginning in or around August 2014, Zen sold the magnet spheres – which included the magnet spheres purchased from Star as well as indistinguishable magnet spheres that Zen obtained from other sources – under the brand name "Neoballs." (Movant's Appx. p. 57 – Qu testimony.) Admitted.

5. As of May 11, 2015, the date of the evidentiary hearing, Zen was still selling Neoballs, which likely included the magnet spheres purchased from Star and indistinguishable magnet spheres Zen had obtained elsewhere. (Movant's Appx. p. 36-38, 57 – May 6, 2015 Zen website posting; Qu testimony.) Admitted.

6. As of May 11, 2015, Zen's inventory of Neoballs was more than 1,000,000. (Movant's Appx. p. 59 – Qu testimony.) Denied. The estimate given was incorrect, and the actual number is about 500,000. The exact quantity was counted by CPSC Investigators on May 27, 2015. The count was not shared with Zen.

7. On or about December 1, 2014, Zen began selling the magnet cubes it purchased

from Star. (Movant's Appx. p. 25, 57 – December 1, 2014 Zen web posting; Qu testimony.) Admitted.

8. Zen sold the magnet cubes it purchased from Star under the brand name "Newbcubes." (Movant's Appx. p. 25 – December 1, 2014 Zen web posting.) Admitted.

9. By March 20, 2015, Zen had sold all 114,000 of the magnet cubes it had purchased from Star. (Movant's Appx. p. 31, 56-57 – March 20, 2015 Japha letter; Qu testimony.) Admitted.

10. On July 17, 2014, Star signed a Consent Agreement with the CPSC in which Star agreed to a voluntary corrective action to recall the magnets it sold under the brand name Magnicube. (Movant's Appx. p. 3-14, 41-42 – Consent Agreement; Lee testimony.) Admitted.

11. On July 31, 2014, the CPSC posted on its website the Consent Agreement in which Star agreed to undertake a voluntary corrective action to, among other things, recall the Star Magnets. (Movant's Appx. p. 3-14, 43 – Consent Agreement; Lee testimony.) Admitted.

12. On August 4, 2014, the CPSC distributed and posted on its website a press release announcing that Star, among other things, would recall the Star Magnets as part of a voluntary corrective action. The press release contained a hyperlink to a copy of the Consent Agreement. (Movant's Appx. p. 34-35, 43-44 – CPSC press release; Lee testimony.) Admitted.

13. On July 10, 2014, when Zen purchased the Star Magnets, Qu knew that Star

4

was about to recall the magnets. (Movant's Appx. p. 48, 52 – Qu testimony.) Admitted.

14. The impending recall enabled Zen to buy the magnets at a large discount. (Movant's Appx. p. 45, 52-53, 59-60 – Lee testimony; Qu testimony.) Admitted.

15. Qu testified that, at the time of the purchase, "I was aware that it was likely that it would soon [be] illegal to sell Magnicube products." (Movant's Appx. p. 48 – Qu testimony.) Admitted; but note that this was in reference to Magnicube products only and not all fungible commodity magnet spheres.

16. Qu's attorney is the same attorney who signed the Consent Agreement on behalf of Star. (Movant's Appx. p. 12, 41 – Consent Agreement; Lee testimony.) Admitted; but note the Consent Agreement specifically did not admit that Magnicube products were defective.

17. On August 4, 2014, Qu posted a statement on Zen's website that referred to Star's settlement and that contained a hyperlink to the CPSC's press release about the Star Magnets' recall. (Movant's Appx. p. 19-23, 53 – August 4, 2014 Zen web postings; Qu testimony.) Admitted.

18. On or shortly after March 4, 2015, Qu received a letter from the CPSC that stated that the CPSC had announced on August 4, 2014, that Star had agreed to recall the Star Magnets and that the Star Magnets were subject to a voluntary corrective action taken by the manufacturer in consultation with the CPSC and of which the CPSC had notified the public. (Movant's Appx. p. 27-29, 50, 53-54 – March 4, 2015 CPSC letter; Qu testimony.) Admitted.

19. On or shortly after April 3, 2015, Qu received a letter from the CPSC that stated that the Star Magnets were subject to a voluntary corrective action taken by the manufacturer in consultation with the CPSC and of which the CPSC had notified the public. (Movant's Appx. p. 32-33, 54 – April 3, 2015 CPSC letter; Qu testimony.) Admitted.

### B. FACTS THAT DEFENDANTS BELIEVE ARE MATERIAL AND UNDERMINE THE UNITED STATES' ARGUMENT

Defendants were operating under a good faith belief that they were complying with the Consumer Product Safety Act ("CPSA"), and deny Plaintiff's allegations that Defendants' conduct violated the CPSA. The plain language of the Consent Agreement, read together with the Administrative Complaint against Star (Def. Ex. A), supports the conclusion that the "subject products" of the Consent Agreement could not be identified as any product sold by Zen. The Government is correct in stating that there are numerous undisputed facts in this case. However, the Government has omitted material disputed facts which, even if not disputed, undermine the Government's motion. These facts are:

1. The subject products defined in the case against Magnicubes are different than those defined in the case against Zen Magnets. (Compare Defendants' Ex. C – Zen Complaint; Defendants' Ex. A – Star Complaint.)

2. The subject products and the "indistinguishable" magnets sold by Defendants were of the same specification and originated from the same factory. (Defendants' Ex. D – Qu Testimony, 56:22-24.)

3. The "subject products" are defined by marketing, advertising, warnings, packaging, and branding in both the Consent Agreement (Movant's Ex. 1, ¶ 3) and the

Administrative Complaint (Defendants' Ex. A – Star Complaint, ¶¶ 8-11, 44-77).

4. Further, the Order which was at issue in the Government's request for preliminary injunction, and made a part of the record at that hearing as Exhibit 2 (attached here as Defendants' Ex. B), is inconsistent with the Consent Agreement (made a part of the record at the hearing for preliminary injunction as Exh. 1, in that the Order states that the Consent Agreement "is accepted and incorporated by reference herein," and contains language inconsistent with that of the Consent Agreement, especially regarding the alleged product hazard, which was neither admitted nor yet determined by an administrative tribunal.

5. Specifically, in entering into the Consent Agreement, Star Networks, LLC, expressly stated that Respondent (Star) did not admit the existence of a defect in the Subject Products, a substantial product hazard or reportable information pursuant to Sec. 15(b) of the CPSA, 15 U.S.C. Sec. 2064(b)." Para. 24, Consent Agreement, Ex. 1. See also para. 5 therein: ("Respondent filed an Answer to the Complaint in which it denied the Subject Products present a substantial product hazard or contain a defect within the meaning of Section 15(a) of the CPSA, 15 U.S.C. Sec. 2064(a) or Section 15(a)(1) of the CPSA, 15 U.S.C. Sec. 2064(a).").

6. Yet, the Order specifically states: "To remedy the substantial product hazard and the substantial risk of injury to children as alleged in the Complaint, . . ." (See Defendants' Ex. B, ¶ 3 – Docket 13-2 Order.)

7. No substantial product hazard nor substantial risk of injury to children has been

admitted, acknowledged, or found through any administrative adjudication to date.

8. Until this Court enjoined Defendants from selling its Neoballs, Zen Magnets was legally allowed to sell Neoballs.

### III. ARGUMENT AND LEGAL AUTHORITY

#### A. PLAINTIFF HAS FAILED TO SHOW THAT SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE

The Government is not entitled to judgment as a matter of law. In ruling on a motion for summary judgment, the court may neither weigh evidence nor find the facts. *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco, and Firearms*, 452 F.3d 433, 451 (6th Cir. 2006). All doubts are resolved against the moving party, all evidence will be construed in a light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-movant's favor. *Beard v. Banks*, 548 U.S. 521, 530-531 (2006); *Hunt v. Cromartie*, 526 U.S. 541, 550-555 (1999). In the case at bar, the Government cannot meet its burden of showing that no genuine issue of material fact exists. Admissible evidence shows that the products sold by Zen Magnets and Shihan Qu were distinct products, separate and different from the "subject products" defined in the Consent Agreement. This is a material factual dispute that affects the outcome of this litigation *(see Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981)), and, consequently, the Government's Motion for Summary Judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (an issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the particular litigation if the substantive law

at issue so renders them).

## B. THE SUBJECT PRODUCTS THE GOVERNMENT IS SEEKING TO ENJOIN FROM SALE ARE NOT THE SAME AS THOSE IN THE CONSENT AGREEMENT UPON WHICH IT BASES ITS ARGUMENT

While 15 U.S.C. § 2068(a)(2)(B) does prohibit the sale of a product subject to corrective action, the corrective action in this matter was ordered based on a finding of substantial product hazard and substantial risk of injury to children applied to a different subject product than that sold by Defendants, and the Order making that finding was inconsistent with the language of the Consent Agreement leading to that Order.

Defendants deny that the magnets identified in the Complaint in this matter present a substantial product hazard or create an unreasonable risk of harm. (See e.g., Defendants' Ex. D – Qu Testimony, 64:10-12) (stating Defendants' good faith beliefs in argument that Defendants were in compliance with the CPSA).) Whether the magnets are a substantial product hazard has not been admitted or determined in any tribunal. In fact, relative to other products such as balloons and trampolines, it would be inaccurate to even colloquially refer to magnet spheres as dangerous.

The plain language of the Consent Agreement, read together with the Administrative Complaint against Star, supports the conclusion that the "subject products" of the Consent Agreement differed from the magnets sold by Zen. At issue in this matter are two different readings of the Consent Agreement, which is a contract. The plain language of the Consent Agreement states that the "subject products" were "small, individual magnets with a flux index greater than 50 sold under the brand name Magnicube Magnet Balls

(Magnicube Spheres) and Magnicube Magnet Cubes (Magnicube Cubes)." (Movant's Appx. p. 3 – Consent Agreement.) Only those products sold and marketed as Magnicube Spheres and Cubes were prohibited for sale, because that is precisely what the plain language of the Consent Agreement provides. Defendants maintain this is the proper and controlling reading.

Pursuant to Maryland contract law,[1] the plain and unambiguous language of the contract governs. *See General Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985) ("the clear and unambiguous language of an agreement will not give away [sic] to what the parties thought that the agreement meant or intended it to mean"); *Chicago Title Ins. Co. v. Lumbermen's Mut. Casualty Co.*, 707 A.2d 913, 917 (Md. Spec. App. 1998) ("[w]hen the language of the contract is clear, the court will presume that the parties intended what they expressed, even if the expression differs from the parties' intentions at the time they created the contract").

The United States urges this Court to adopt a reading that goes beyond the plain language of the Consent Agreement to include all magnets similar to those sold under the Magnicube brand, as well as all magnets that were part of the Magnicube sets and placed in different products (i.e., those sold by Defendants). This reading is not based on the plain language of the Consent Agreement, and is therefore not supported by the contract interpretation law governing the construction of the agreement. *See Taylor v. NationsBank*, 776 A.2d 645, 653 (Md. 2001) (defining the objective law of contract

---

[1] The Consent Agreement was entered into in Maryland.

interpretation); *Coopersmith v. Isherwood*, 219 Md. 455, 463 (Md. 1959) ("[t]he reasons or motives of the parties for making contracts may be inquired into if the language is not clear, in order to determine the intention of the parties, but not to distort the meaning of clear language"); *General Motors Acceptance Corp. v. Daniels*, 492 A.2d at 1310 ("As a result, when the contractual language is clear and unambiguous, and in the absence of fraud, duress, or mistake, parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of that contract."). Additionally, as discussed below, and beyond the matter of mere contract interpretation, there are functional and material differences between the products sold by Defendants and those sold by Star Networks.

Contract interpretation is a matter of law that is appropriate for resolution on summary judgment. However, there is no ambiguity in this matter. As such, the only interpretation in accord with applicable substantive contract law supports the conclusion that the Magnicube products identified in the Consent Agreement are prohibited consumer products, which by definition excludes functionally equivalent, fungible magnets sold by other companies with different warnings, packaging, branding, and marketing.

In the light most favorable to Defendants [non-moving parties], and drawing all permissible inferences from the submitted affidavit, exhibits, and depositions in Defendants' favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), Plaintiff is unable to show that the facts it wishes to portray as "incontrovertible" are not in controversy because the Government has failed to present salient facts that would support its position. The Government ignores facts that show that

the subject products it seeks to enjoin are not the same as those as identified and defined in the Consent Agreement upon which it relies. Specific details of how the CPSC determines what a subject product is need to be further explored in this matter and cannot be determined through the summary judgment process.

It is well-settled that the non-moving party cannot defeat summary judgment with nothing more than unsupported assertions or the allegations in its pleadings. Fed.R.Civ.P. 56(e); *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To that end, Defendants support their arguments herein with the following admissible evidence that shows genuine issues of material fact exist.

## C.  THE PRODUCTS SOLD BY DEFENDANTS WERE NOT THE SAME AS THE PRODUCTS SUBJECT TO THE CONSENT AGREEMENT AT ISSUE IN THIS MATTER

Zen and Qu agree that the magnets being sold by Star as sets of magnet spheres and magnet cubes under the brand names Magnicube Magnet Balls (Spheres) and Magnicube Magnet Cubes, respectively, were subject to the voluntary corrective action. (Movant's Appx. p. 3 – Consent Agreement.) Critically, however, the individual magnet spheres and cubes are fungible products that can still be legally employed for use in other products.[2] It therefore necessarily follows that how the magnets are sold and used is

---

[2] The Government has asserted that the magnets themselves are not banned consumer products, but are only unfit for certain uses. See Zen Magnets, LLC v. Consumer Product Safety Commission, No. 14-9610 (10th Cir. ) (ongoing). To the extent the Government might be taking a contradictory position in this case, it would be indicative of the Government's general approach against Defendants in resolving this administrative matter. See e.g., Former CPSC Commr. Nancy Nord, Shihan vs. Goliath (May 11, 2015)

material to what "subject products" are and whether or not the magnets are prohibited for sale. The products sold by Defendants were not the same as those sold by Star, according not only to the Consent Agreement's terms, but also the Government's administrative complaints against Star Networks (Defendants' Ex. A) and Zen Magnets (Defendants' Ex. C).

As argued above, the plain language reading of the Consent Agreement clearly and unequivocally prohibits the sale of Magnicube Spheres and Magnicube Cubes, but is necessarily silent regarding other products containing identical spherical magnets. The administrative complaints against Zen Magnets and Star Networks describing how the magnets are sold is material to the hazards posed. Specifically, the Administrative Complaint against Star Networks, which gave rise to the Consent Agreement, alleged that the "subject products" were defective because their instructions, packaging, and warnings were inadequate. (Defendants' Ex. A – Star Admin. Complaint, Count 1.)

The Administrative Complaint against Star also alleges that the Magnicube products were defective as a result of their operation and use, and as to those subject products, specifically alleges that the advertising and marketing of the Magnicube products led to the use of products by children which contributed to the subject products' defect. (Defendants' Ex. A – Star Complaint, ¶¶ 64-69.) Irrefutably then, part of the Commission's definition of "subject product" necessarily includes not only the fungible magnets, but how they are

---

(Defendants' Ex. E – Nancy Nord Blog).

packaged, marketed and who the consumers are. Importantly, while the administrative complaint against Star alleges the subject product magnets are inherently dangerous, Star never agreed to that conclusion, and it was not part of the Consent Agreement. (See Movant's Ex. 1.) Though a similar administrative complaint was filed against Defendant Zen Magnets (see Defendants' Ex. C – Zen Complaint), the danger associated with the magnets, regardless of how branded, packaged, or sold, has yet to be determined, and the adequacy of Zen's warnings has yet to be ruled upon by any tribunal, administrative or otherwise. Furthermore, the Government cannot say that the magnets sold by either Zen Magnets or Star Networks present a substantial product hazard – that is a matter for the Administrative Law Judge to determine.

Additionally, by selling the magnets obtained from Star in its own distinct products, Defendants materially altered the end consumer product. Specifically, when Defendants changed not only the warnings and instructions, but also the packaging, branding (see Defendants' Ex. F, Lee Testimony, 26:25-27:3), and customer base, it fundamentally altered the subject products. Zen Magnets and Mr. Qu contend that when they did so, it turned the magnets into a fundamentally different product that addressed the Government's then concerns with Star's products. *See Wiegel v. Stork Craft Mfg.*, 946 F. Supp. 2d 804, 816 n. 9 (N.D. Ill. 2013) (noting that a fundamentally changed product could result in it no longer being subject to a voluntary corrective action under 15 U.S.C. § 2068(a)(2)(B)); *see also. PepsiCo Inc. v. Coca-Cola Co.*, 114 F. Supp. 2d 243, 248 (S.D.N.Y. 2000) (noting that, for purposes of the Sherman Antitrust Act, the product

definition can be narrowed by the type of consumer). The *PepsiCo* case deals with a different matter, but is cited here for persuasive support, not precedential value.

When the magnets are removed from any set sold by Star, they are simply fungible commodity items. Zen did nothing more than take those commodity items (identical to those Zen could legally purchase from China until April 2015) (see Defendants' Ex. D – Qu Testimony, 56:22-24, pp. 74-76) and put them in Zen's own distinct product. At minimum, a reasonable person could find that breaking up a product into its component or constituent parts, and putting those into a different product (with different warnings, instructions, and branding) means that the new product is separate and distinct from the former. Thus, an outstanding genuine issue of material fact exists.

**D. THE ORDER ISSUED IN CPSC DOCKET 13-2 WAS FACTUALLY AND LEGALLY INCONSISTENT WITH THE CONSENT AGREEMENT ON WHICH IT WAS BASED**

The Consent Agreement, ¶24, states: "[T]he signing of this Consent Agreement by Respondent [Star] does not constitute an admission by Respondent of the existence of a defect in the Subject Products, a substantial product hazard or reportable information pursuant to Section 15(b) of the CPSA, 15 U.S.C. § 2064(b)." Despite this language, the Commission issued an order (Docket 13-2, Defendants' Ex. B) "to remedy a substantial product hazard and the substantial risk of injury presented by Star's products." *Id.*, ¶¶ 2-3. Star never agreed to such terms.

On June 27, 2014 the Commission, through Complaint Counsel, during the litigation of the administrative complaint against Zen, provided a supplemental answer to an interrogatory regarding the basis for its determination that the subject products were a

substantial product hazard. (Defendants' Ex. G - Complaint Counsel's Supplemental Response to Respondents' Zen magnets, LLC's and Star Networks USA, LLC's Interrogatories to Consumer Product Safety Commission.) The interrogatory read: "Identify with particularity the bases upon which the CPSC used to determine that the subject products described in the Complaints of the consolidated actions are a substantial product safety hazard to consumers as defined in applicable administrative rules or the CPSC's own definitions." Complaint Counsel's original response to this Interrogatory, dated June 12, 2014, read:

> "The CPSC has not determined that the Subject Products described in the Complaints for CPSC Dockets 12-2 [against Zen Magnets] and 13-2 of the consolidated actions are a substantial product hazard. Staff made a preliminary determination of defect with regard to the products sold by Zen and Star, and notified counsel and the firm principals of the findings shortly after the findings were made. The purpose of [the administrative] proceeding is to determine whether the Subject Products are a substantial product hazard pursuant to CPSA Section 15,15 U.S.C. § 2064, and its implementing regulations."

Id., at p. 3.

Complaint Counsel then supplemented that response with a more detailed one, but maintained its position that, "[b]ecause CPSC Dockets 12-2 and 13-2 have not concluded and no order has issued, the CPSC has not determined that the subject products create a substantial product hazard. The purpose of this proceeding is to determine whether the subject products are a substantial product hazard pursuant to CPSA Section 15, 15 U.S.C. § 2064, and its implementing regulations." Id., at p 4.

To date, there has never been a finding that the products subject to the voluntary corrective action, or those sold by Defendants, present a substantial product hazard. Yet,

16

the Commission has issued an order inconsistent with that reality and the Consent Agreement entered into by Star. This is significant because the Consent Agreement and Order at issue in this matter arise from administrative proceedings in which the pleadings define the Subject Products differently than the Government seeks to define them here. It is on these bases the Defendants in this matter have asserted their affirmative defenses, including violation of due process and violation of traditional notions of fair play. Defendants' Answer, Aff. Defenses 9 and 10, filed May 27, 2015. Where the Government has included as part of the definition of the subject products the packaging, marketing, markets, and warnings all as part and parcel of the product, it is simply improper to limit the definition in a later proceeding such as this that seeks to penalize a party or parties.

### E. DEFENDANTS ARE NOT PERPETRATING AN END RUN-AROUND OF THE CPSA OR CPSIA, AND FINDING FOR DEFENDANTS WILL NOT EVISCERATE THE GOVERNMENT'S RECALL POWER

The Government argues that a finding for Zen Magnets in this matter would eviscerate the recall powers of the Consumer Product Safety Improvement Act ("CPSIA"). This is not the case.[3] Plaintiff alleges "changing the brand, packaging and sales method does not constitute a different product." The commodity magnets themselves cannot be identified as Magnicubes,or any other brand name because the commodity magnets are

---

[3] Additionally, if the Government believes the fungible commodity magnets present a hazard to consumers, it is free to institute a ban or recall on all such magnets. As Mr. Qu noted has acknowledged, if the Commission has an issue with the fungible magnets, there is a proper administrative procedure for addressing that matter (Defendants' Ex. D – Qu Testimony, 58:13-18), which is separate from the one at hand, and is, in fact, separate from all proceedings thus far initiated by the Commission. See generally, 15 U.S.C. § 2057.

fully fungible, indistinguishable from one another, and mutually interchangeable. Fungibility of the component part (magnet spheres) purchased from Star Networks, and included in Neoballs products, is exactly why a different branding, packaging, and sales method does constitute a different product. It is the Government that defined the subject products by including brand name, packaging, marketing and markets along with the fungible product. But, now the Government contents that the language identifying the "subject products" by brand name was merely for descriptive purposes and has no bearing on the actual product definition. Such an argument runs counter to its prior definition and contract interpretation. Given the utter lack of distinguishable characteristics of the Star Networks' magnets to other magnets, allegedly nugatory descriptors of packaging, marketing, branding and consumer profile, must actually carry considerable weight.

The definition that now suits the Commission should not be held against the Defendants. This was not the definition Defendants were led to believe applied in the Star Consent Agreement and subsequent Order issued by the Commission. Because Zen Magnets was legally allowed to sell its own products, which included magnets that had similar specifications to its own, Defendants in no way sought to deceive or undermine the Commission's authority. Had the Commission instituted different administrative proceedings to prohibit all similar magnets from being sold, this proceeding might not have occurred. However, the Commission chose to restrict the sale of magnets piecemeal, company-by-company, and in doing so created a climate of uncertainty in which Defendants are now forced to defend their good faith belief of compliance. And, contrary

to the Government's argument, finding for Zen would in no way eviscerate the Commission's authority to recall dangerous products in the future.

## IV. CONCLUSION

Although there are numerous facts that are not in dispute here, there are also several outstanding issues of material fact that have yet to be resolved. These material questions are: (a) whether the plain language of the Consent Agreement covers the fungible magnets purchased by Defendants; (b) whether the hazards posed by Zen Magnets' products are the same as those posed by Star's products; (c) whether the Consent Agreement and subsequent Order in Docket 13-2 were properly issued; and (d) whether the products sold by Defendants were prohibited from being sold pursuant to the Consent Agreement.  Consequently, this matter is not suitable for disposition by summary judgment under Fed. R. Civ. P. 56.  WHEREFORE Defendants respectfully request that Plaintiff's motion for summary judgment be denied.

Dated this 8th day of July, 2015.

RESPECTFULLY SUBMITTED,

THE LAW OFFICES OF DAVID C. JAPHA, P.C.

S/ David C. Japha

_____
by David C. Japha
950 S. Cherry Street, Ste. 912
Denver, CO 80246
(303) 964-9500
Fax: 1-866- 260-7454
email: davidjapha@japhalaw.com
Attorney for Defendants Zen Magnets, LLC and Shihan Qu

## CERTIFICATE OF SERVICE

      I hereby certify that on this 8th day of July 2015, I served a true and correct copy of the Defendants' Response to the United States' Motion for Summary Judgment together with an appendix on counsel for the United States:

Mr. Patrick Jasperse, Trial Attorney, Consumer Protection Branch, United States Dept. Of Justice
patrick.jasperse@usdoj.gov

Ms. Jamie Mendelson, Assistant United States Attorney
jamie.mendelson@usdoj.gov

In addition, Counsel certifies that he has sent a copy of the Defendants' Response to the United States' Motion for Summary Judgment to Mr. Qu for himself and on behalf of Zen Magnets, LLC.

s/ DAVID C. JAPHA