# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00955-CMA-MJW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ZEN MAGNETS, LLC, and
SHIHAN QU,

    Defendants.

_____

## UNITED STATES' REPLY TO THE DEFENDANTS' RESPONSE
## TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT
_____

The question in this case is whether it is lawful to sell a recalled consumer product by repackaging and renaming the product. That question should be decided by this Court, not by a jury. There is no dispute about what Zen Magnets, LLC, and its owner, Shihan Qu, ("Defendants") did. It is for the Court to determine whether Defendants' conduct was unlawful. Because the undisputed material facts show that Defendants knowingly violated the Consumer Product Safety Act ("CPSA") by selling dangerous, recalled magnets, the United States respectfully requests that the Court grant the motion for summary judgment as to liability.

**I.**     **Summary judgment is appropriate because there are no disputed material facts.**

The United States is entitled to judgment as a matter of law if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). An issue is "genuine" if the facts

"might lead a reasonable jury to return a verdict for the nonmoving party." *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. District No. 2*, 935 F. Supp. 2d 1052, 1055 (D. Colo. 2013). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Zenith*, 475 U.S. 574, 585 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In their response to the summary judgment motion ("Def. Response;" Doc. 28), Defendants admit every material fact the United States identified.[1] Def. Response at 2-6. Defendants admit that on July 10, 2014, they purchased 917,000 magnets from Star Networks, USA LLC, ("Star"). *Id.* at 2-3, U.S. Fact 1. Defendants admit that on July 17, 2014, Star signed a Consent Agreement ("the Agreement") that included a voluntary corrective action plan that required Star to stop selling small, extremely powerful magnets (the "Star magnets"), recall the magnets, issue refunds to consumers who returned the magnets, and destroy the magnets in its possession. *Id.* at 4, U.S. Fact 10. Defendants admit that the Consumer Product Safety Commission ("CPSC") posted the Agreement on its website on July 31, 2014, and issued a press release about the corrective action plan and recall on August 4, 2014. *Id.* at 4, U.S. Facts 10-11. Defendants admit selling the recalled Star magnets thereafter. *Id.* at 3-4, U.S. Facts 4, 5,

---

[1] The one exception is a non-material fact in which Defendants' make a minor correction to Shihan Qu's testimony. Def. Response at 3, U.S. Fact 6. ¶ 6. "U.S. Fact" citations refer to the numbering of the undisputed facts in Defendants' response.

7-9.  Even construed in the light most favorable to Defendants, these facts establish that Defendants (1) sold, offered for sale, manufactured for sale, distributed in commerce, or imported into the United States a consumer product that (2) was subject to a voluntary corrective action taken by the manufacturer in consultation with the CPSC, (3) of which the CPSC notified the public or of which Defendants knew or should have known, in violation of 15 U.S.C. § 2068(a)(2)(B).  There is nothing in this case for a jury to decide.

When the Star magnets became subject to a corrective action of which the CPSC notified the public, the sale of those specific magnets became unlawful.  Nothing in the Agreement that made the magnets subject to a corrective action nor in the CPSC's press release announcing the corrective action supports Defendants' position that selling the exact same magnets under different names, putting the magnets in different packages, and inserting different warnings transformed the magnets into a different consumer product.  Def. Response at 9-11.  The press release, which identifies the consumer product as "Magnicube Spheres and Magnicube Cubes" and "high-powered magnetic sets," does not indicate that these exact magnets, if sold under a different name, in different packaging, or with different warnings, would somehow not be subject to the corrective action.  Movant's Appx. p. 34.

Similarly, there are no such limitations in the Agreement's unambiguous definition of the consumer product.  Paragraph 3 of the Agreement stated:

> The Subject Products are small, individual magnets with a flux index greater than 50 sold under the brand name Magnicube Magnet Balls (Magnicube Spheres) and Magnicube Magnet Cubes (Magnicube Cubes).  The Subject Products were

3

>introduced into commerce sometime after August 2010. Star Networks is a manufacturer, importer and distributor, as those terms are defined in . . . the CPSA, 15 U.S.C. Section 2052(a)(5),(7),(8),(9),(11) and (13), of Magnicube Spheres and Magnicube Cubes (collectively, the Subject Products). The Subject Products are offered for sale to consumers for their personal use in or around a permanent or temporary household or residence, in recreation or otherwise.

Movant's Appx. p. 3-4. No reasonable jury would find that the Agreement's definition of covered products was limited to magnets named Magnicube or that the Star magnets were no longer subject to the voluntary corrective action if sold with "different warnings, packaging, branding, and marketing." Def. Response at 11. The operative part of the Agreement's definition is "small, individual magnets with a flux index greater than 50." The Agreement's inclusion of the names of the magnets was descriptive, just as the subsequent sentences about the time period in which the products were introduced into interstate commerce, the products' manufacturer, and the products' audience were descriptive.[2]

---

[2] Defendants state that the Agreement was plain and unambiguous, Def. Response at 9-12, but then argue that the CPSC's administrative proceedings, a CPSC order, and other matters are essential to understanding that Agreement, *Id.* at 12-18. The United States agrees the Agreement is plain and unambiguous and thus that this case is ripe for summary judgment – in the United States' favor. To the extent deciding this case requires interpreting the Agreement between the CPSC and Star, federal law controls. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988); *Mirrow v. Barreto*, 80 F. App'x 616, 618 (10th Cir. 2003) (unpublished) (citations omitted). Interpreting an unambiguous contract is a question of law that can be decided by the court on summary judgment. *See Pub. Serv. Co. of Okla. v. Burlington N. R.R. Co.*, 53 F.3d 1090, 1096 (10th Cir.1995); *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 695 (10th Cir. 1981). "Where a contract is unambiguous, its terms are given plain meaning, and the intent of the parties is determined from the document alone." *Anthony v. United States*, 987 F.2d 670, 673 (10th Cir. 1993) (citations omitted).

Defendants cite *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 816 n.9 (N.D. Ill. 2013), which in dicta in a footnote said that a repair kit that resolved a recalled crib's safety concerns turned the crib into a "fundamentally different product" that was no longer subject to a voluntary corrective action. Def. Response at 14. By contrast, Defendants did not fundamentally change the magnets when they gave the magnets new names and put them in different packages that contained different warnings. Defendants did not melt, reshape, or change the magnetic force of the magnets before selling them. Movant's Appx. p. 54-55 – Shihan Qu testimony. The recalled magnets – regardless of how they are packaged or under what name they are sold – are subject to the voluntary corrective action.

Providing only a technical description of a product being recalled would make recalls essentially worthless for the public and for retailers. A dishwasher recall would have little effect if, instead of identifying the dishwasher's name and model number, the recall announcement provided only the dishwasher's dimensions. By Defendants' logic, if a recall announcement specified the name of a Whirlpool dishwasher being recalled, Frigidaire would be free to sell the same exact product once it slapped its name on the dishwasher and put it in a new crate. The Court rejected this argument when it issued the preliminary injunction. Doc. 12 at 8-9. There are no new, material, disputed facts. The breadth of the voluntary corrective action remains unambiguous. Defendants' conduct remains undisputed. Thus, this case should be decided by summary judgment.

## II.     The facts Defendants state are in dispute are not material.

The eight additional facts that Defendants put forward are irrelevant and beyond the scope of this narrow enforcement action.   Def. Response at 6-9.

### A.     The administrative proceedings are not relevant to whether Defendants violated § 2068(a)(2)(B).

The Agreement resolved an administrative complaint brought by the CPSC that sought a recall of Star's magnets.   The definition of the product in the administrative complaint is not needed to interpret whether the product the Defendants purchased from Star and then sold was subject to the voluntary corrective action.   Consequently, Defendants' facts 1 and 3, which contend that the product was defined differently in the administrative complaint than in the Agreement that resolved the administrative complaint, have no bearing on whether Defendants' sale of the product was unlawful. Star resolved the administrative proceedings by agreeing to a voluntary corrective action to recall the magnets.   That fact is not in dispute, nor is there any question that Defendants subsequently sold those exact recalled magnets.

The Court noted when granting the preliminary injunction that paragraph 27 of the Agreement states that its provisions "shall be interpreted in a reasonable manner to effect its purpose to remedy the hazard that the Complaint alleges the Subject Products pose." Doc. 12 at 8.   That general purpose statement in the Agreement does not mean that every pleading from the administrative proceedings must be examined to interpret the plain language of the Agreement nor that the administrative complaint overrides the unambiguous terms of the Agreement.   Paragraph 27 of the Agreement also does not

6

require the hazard the complaint alleged to be proven before the voluntary corrective action required by the Agreement takes effect, as addressed in section C below.

Even if the administrative pleadings against Star were relevant, the product's definition in the CPSC's administrative complaint is consistent with the United States' interpretation here.  Defendants' fact 3 states that the administrative complaint against Star defines the product in paragraphs 8-11 and 44-77.  Def. Response at 6-7. Paragraphs 8-11 of the administrative complaint contain more detail, but essentially define the product in the same way as in paragraph 3 of the Agreement.  *Compare* Movant's Appx. p. 3-4, *with* Respondent's Appx. p. 4-5.[3]  In neither the administrative complaint nor the Agreement is the product's definition limited to its name.  Paragraphs 44-77 of the administrative complaint do not define the product, but allege that no warnings can make the product safe.  *See* Respondent's Appx. p. 10-15.  If anything, the administrative complaint undercuts Defendants' argument.  Defendants contend their sale of the recalled Star magnets was permissible because the warnings were different, but paragraph 62 of the complaint states: "No warnings or instructions could be devised that would effectively communicate the hazard in a way that would be understood and heeded by consumers and would reduce the incidences of magnet ingestions." Respondent's Appx., p. 13.

Defendants also suggest that the United States "might be taking a contradictory position in this case" than its position in the pending Tenth Circuit case in which

---

[3] Citations to page numbers in the Respondent's Appendix are to the page numbers provided at the bottom of the page, *e.g.*, "Defendant's Ex. A – Appx. p. 4."

Defendants have challenged the safety standard for magnet sets that went into effect in April 2015.   Def. Response at 12, n.2.   In the Tenth Circuit case, the United States is defending the CPSC's adoption of the safety standard, issued pursuant to 15 U.S.C. §§ 2056 and 2058, requiring that magnets and magnet sets intended, marketed or commonly used as manipulative or construction items for entertainment be large enough to prevent swallowing or less powerful to reduce the danger of injuries if swallowed.   16 C.F.R. part 1240.   In this case, the United States is seeking to stop Defendants from selling magnets that are the subject of a voluntary corrective action, in violation of 15 U.S.C. § 2068(a)(2)(B).   There is no inconsistency in the United States' position and no basis for Defendants' claims that the United States has violated its due process rights and traditional notions of fair play.   Def. Response at 17.

### B. The CPSC's order is not relevant to whether Defendants violated § 2068(a)(2)(B).

Defendants' facts 4 and 6 state that the CPSC's July 28, 2014 order is inconsistent with the Agreement.   The order and the Agreement are not inconsistent, but the Court need not decide that issue to decide this case.   The CPSC's order is relevant to whether Defendants violated § 2068(a)(2)(C), but the United States is not seeking summary judgment on that claim and does not intend to pursue that claim if the Court grants summary judgment as to the § 2068(a)(2)(B) claim.   *See* Doc. 20 at 4 n.2.   The order is irrelevant to determining whether Defendants violated § 2068(a)(2)(B).

### C. Establishing a substantial product hazard or defect is unnecessary to establishing that Defendants violated § 2068(a)(2)(B).

Defendants' facts 5 and 7 state that Star never admitted that its magnets constituted a substantial product hazard. Defendants appear eager to try to litigate here whether the recalled Star magnets are defective, Def. Response at 9, 14, but there is no need to do so. That Star did not concede that its magnets were defective as part of a settlement to resolve its administrative case is not relevant to determining whether Defendants sold magnets that were subject to a voluntary corrective action. Establishing that the Star magnets constitute a substantial product hazard under § 2064(a) is not required to prove that Defendants violated § 2068(a)(2)(B). What is required to establish the § 2068(a)(2)(B) violation is that Defendants sold magnets that were subject to a voluntary corrective action. There is no dispute that once the CPSC posted the Agreement regarding the corrective action on its website and issued a press release announcing the corrective action, the Star magnets were subject to a voluntary corrective action and it was unlawful for Defendants to sell those magnets.

### D. Whether Defendants could lawfully sell magnets similar to the recalled Star magnets is irrelevant to determining whether Defendants unlawfully sold the recalled Star magnets.

Defendants' facts 2 and 8 state that the recalled Star magnets are indistinguishable from magnets that Zen could legally have imported from a factory in China. Import and sale of small magnets with a flux index of greater than 50 became unlawful when the safety standard took effect in April 2015. *See* 16 C.F.R. part 1240. Because Defendants comingled the recalled Star magnets with magnets obtained

elsewhere, the preliminary injunction that went into effect on May 15, 2015, covered both groups of magnets.  Doc. 12 at 13.  The fact that for a brief period Defendants could lawfully import at greater expense magnets not subject to a voluntary corrective action did not give Defendants license to sell the recalled magnets that it obtained at a big discount from Star, in violation of the law's prohibition against selling products that are the subject of a voluntary corrective action.  This enforcement action is not about Defendants' sale of magnets that were similar or equivalent to the Star magnets.  This case is about Defendants' illegal sale of the recalled Star magnets.  The Star magnets were subject to a voluntary corrective action and Defendants' sale of the recalled Star magnets violated 15 U.S.C. § 2068(a)(2)(B).

## III.   Conclusion

The straightforward, undisputed evidence establishes that Defendants sold, offered for sale, and distributed in commerce a consumer product that is subject to a voluntary corrective action taken by the manufacturer in consultation with the CPSC and of which the CPSC notified the public.  Because no material facts are in dispute and because no reasonable jury could decide otherwise, summary judgment is appropriate. For the reasons given above, the Court should find that Defendants knowingly violated 15 U.S.C. § 2068(a)(2)(B), enter judgment against Defendants as to liability, make the preliminary injunction permanent, and provide the additional injunctive relief requested in the United States' motion.

Dated: July 22, 2015                     Respectfully submitted,

                                              BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

JONATHAN F. OLIN
Deputy Assistant Attorney General

MICHAEL S. BLUME
Director
Consumer Protection Branch

JILL FURMAN
Deputy Director

*s/ Patrick Jasperse*
PATRICK JASPERSE
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
Telephone: (202) 616-0509
Fax: (202) 514-8742
Email: patrick.jasperse@usdoj.gov

JOHN WALSH
United States Attorney

*s/ Jacob Licht-Steenfat*
JACOB LICHT-STEENFAT
Assistant U.S. Attorney
United States Attorney's Office
1225 17th Street, Suite 700
Denver, CO 80202
Telephone: (303) 454-0308
Fax: (303) 454-0100
Email: jacob.licht-steenfat@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2015 I electronically filed the foregoing with the Clerk of the Court using the CMF/ECF system which will send notification of such filing to the following email address:

David C. Japha, Attorney for the Defendants
davidjapha@japhalaw.com

                                            *s/ Patrick Jasperse*
                                            PATRICK JASPERSE
                                            Trial Attorney
                                            Consumer Protection Branch
                                            U.S. Department of Justice
                                            P.O. Box 386
                                            Washington, DC 20044
                                            Telephone: (202) 616-0509
                                            Fax: (202) 514-8742
                                            Email: patrick.jasperse@usdoj.gov